[Cite as *State v. Rosales*, 2018-Ohio-197.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27117 |
| | : | |
| v. | : | Trial Court Case No. 15-CR-2346/1 |
| | : | |
| AVELARDO ROSALES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of January, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

LUCAS WILDER, Atty. Reg. No. 0074057, 120 West Second Street, 400 Liberty Tower, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

AVELARDO ROSALES, P.O. Box 7010, Chillicothe, OH 45601
      Defendant-Appellant, Pro Se

. . . . . . . . . . . .

HALL, J.

{¶ 1} Avelardo Rosales appeals from his conviction and sentence on one count of felony murder, one count of felonious assault, one count of discharging a firearm into a habitation, and two firearm specifications.

{¶ 2} Rosales' appointed appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting the absence of any non-frivolous issues for our review. We notified Rosales of the *Anders* filing and gave him an opportunity to file his own brief. Rosales responded with a pro se brief in which he raises seven assignments of error.

{¶ 3} The present appeal stems from a shooting that occurred outside a Huffman Avenue apartment on the evening of August 2, 2015. Prior to the shooting, Amanda Draughn was inside the apartment with several other people, including Jeremy Combs, John Humble, and her brother, Dallas Draughn. Around 8:00 or 9:00 p.m., Rosales arrived with two other individuals to sell Amanda some Xanax pills. Before the transaction took place, an argument or minor altercation occurred between Humble and Rosales. The incident resulted in Rosales and his companions abruptly leaving.

{¶ 4} Amanda Draughn called Rosales after he had left to ask what had happened. Rosales accused her of attempting to "set him up." She denied the allegation and agreed to meet him at a gas station just down the street to purchase the Xanax. After she walked to the gas station, Rosales arrived in the passenger seat of a blue pick-up truck. Rosales exited the truck, asked if Humble was still at the apartment, and requested his phone number. Amanda instead gave Combs' number to Rosales, who told her to remain at the gas station while he went to talk to Humble. According to Amanda, Rosales then sped

down Huffman Avenue toward her apartment. She had a "bad feeling" and began running after the truck. Amanda testified at trial that the truck remained in her sight the entire time and that she saw it stop in front of her apartment. As she approached, she saw Rosales roll down the passenger window and shoot her brother Dallas Draughn, who was on the porch with Combs. She testified that she reached Dallas while the shooting was in progress and that the blue pick-up truck sped away after her brother was shot. Amanda also testified that Dallas made statements to her about being in pain.

{¶ 5} For his part, Combs testified that he was upstairs in the apartment when he heard the gunshots. He ran outside and saw Dallas on the ground and a blue pick-up truck in the road. Combs recalled hearing Dallas say only "Mexicans." Combs further testified that he saw Amanda Draughn still running toward them and that she arrived quickly. Dallas Draughn later was pronounced dead at an area hospital.

{¶ 6} One of the shots fired struck fifteen-year-old K.M., who lived in the apartment next door to Amanda Draughn. K.M. testified that he was on a couch in his grandmother's living room when he heard gunshots and a bullet passed through his arm. K.M.'s grandmother testified that she later observed multiple bullet holes in her apartment and found actual fired bullets. Investigators found ten spent .45 caliber shell casings on a sidewalk in front of the apartment building. A firearm examiner with the Miami Valley Regional Crime Lab opined that the casings were from the same firearm.

{¶ 7} Later that night or in the early morning hours of the next day, Rosales showed up unexpectedly at the home of Juanita Buschorn, the grandmother of a child Rosales had with Buschorn's daughter. Buschorn testified that Rosales seemed upset and said, "Juanita, I think I just killed somebody." Rosales exited her house soon thereafter without

saying where he was going. Amanda Draughn testified that she also spoke to Rosales shortly after the shooting. According to Amanda, he called and told her that he did not mean to kill Dallas and that the bullet was intended for John Humble.

{¶ 8} Amanda also spoke to police on the night of the shooting and identified Rosales as the gunman. After obtaining Rosales' cell phone number, detectives secured "ping" data for his phone and tracked his travel. The first ping occurred around 1:00 a.m. near the intersection of Interstate 70 and U.S. Route 127 in Preble County. Based on subsequent pings, detectives determined that Rosales was heading west toward Indianapolis. They pursued him to a location east of Indianapolis, where the pinging stopped near several hotels and other businesses. The detectives learned that Rosales had stopped at a hotel to pick up a relative before continuing west. The detectives then discontinued their pursuit and returned to Dayton. Upon their return, however, they received a ping from a location west of St. Louis, Missouri. The information was forwarded to Missouri detectives who quickly located Rosales working with a roofing crew and arrested him.

{¶ 9} While in jail in Missouri awaiting his return to Ohio, Rosales made a number of phone calls, which were recorded. Some of the calls included discussions of the shooting and contained incriminating statements by Rosales. On one call, he dismissed the possibility of claiming self-defense because his actions would seem premeditated. He also disputed a news account that the incident was a drive-by shooting. He stated: "No, I stood there and did my thing; we didn't drive by." In another call, Rosales stated that he "just let it loose" and that he "still wanted to go back and fix up the other one." In another call, Rosales stated that he was still mad and that he would "do it all over again if I had

to." In yet another call, he stated: "Well, now they know that I ain't [no] f***ing b***h. They all f***ing know. They know that. [A]t least [sic]. I didn't take care of [unclear] don't mean I ain't going to take care of everybody else that crossed the line."

{¶ 10} Based on the evidence presented, a jury found Rosales guilty of multiple counts of felony murder and felonious assault, improperly discharging a firearm into a habitation, and several three-year firearm specifications. The jury found Rosales not guilty of discharging a firearm on or near prohibited premises and a five-year firearm specification. After merging multiple counts of murder and felonious assault, the trial court imposed a sentence of fifteen years to life in prison for one count of felony murder, six years in prison for one count of felonious assault, and six years in prison for one count of improperly discharging a firearm into a habitation. The trial court ordered the prison sentences for felony murder and felonious assault to be served consecutively. It imposed the sentence for improperly discharging a firearm concurrently. The trial court also merged all but two of the three-year firearm specifications. It ordered the sentences for the remaining two firearm specifications to be served consecutively. The result was an aggregate sentence of twenty-seven years to life in prison. In addition, the trial court ordered Rosales to pay restitution of $2,936.25 for the funeral bill and imposed court costs. This appeal followed.

{¶ 11} In his first pro se assignment of error, Rosales contends the trial court erred in admitting other-acts testimony in violation of Evid.R. 404(B). His argument concerns Amanda Draughn's testimony that Rosales had participated in beating and robbing a man identified as "Devon" several days before the shooting at issue.

{¶ 12} Amanda testified at trial that her brother Dallas had punched Devon inside

her apartment about a week before the shooting. On that occasion, Devon had pulled a gun, and Dallas had responded by knocking him out. Amanda testified that John Humble then kicked Devon in the face while Rosales went through Devon's pockets and took Xanax and cash from him. Amanda explained that Rosales gave her some of the Xanax to give to Dallas. She testified that Humble "was mad because he didn't get cut in on that." According to Amanda, Humble "felt like he was entitled to something out of that because he kicked the dude in the face[.]" Amanda explained that this prior incident was what Humble and Rosales were arguing about on the night of the shooting just before Rosales and his companions abruptly left the apartment and Rosales then met her at the gas station.

{¶ 13} Although evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith, Evid.R. 404(B) allows other-acts evidence to be admitted to prove motive and other things. Here Amanda Draughn's testimony about the incident involving Devon undoubtedly was permissible for two related reasons. First, it explained what Rosales and Humble were arguing about just prior to Rosales and his companions leaving the apartment on the evening of the shooting. Second, it provided a potential motive for Rosales to return shortly thereafter and to fire shots into the apartment. Although the prosecution is not required to prove a defendant's motive, evidence of motive was particularly relevant here because defense counsel told the jury in opening statements: "There was no motive for anybody to do this, in particular, Mr. Rosales, because again, there was no argument, there was no disagreement." Having reviewed the record, we see no non-frivolous issue as to whether Amanda Draughn's testimony about the incident involving Devon should

have been excluded under Evid.R. 404(B).

{¶ 14} In his second assignment of error, Rosales claims the trial court erred in allowing the State to introduce knowingly-false "perjured" testimony from Amanda Draughn. His argument is premised on perceived conflicts between her testimony and Combs' testimony in some respects, including her precise location at the time of the shooting (whether she had reached the scene or still was running toward it), Combs' location at that time (whether he was inside the apartment or on the porch), and what Dallas Draughn said after being shot (whether he only said "Mexicans" or made additional comments to Amanda). Rosales also notes that Amanda Draughn admitted lying to police when she gave a statement on the night of the incident.

{¶ 15} Upon review, we find no non-frivolous issue with regard to Rosales' perjury argument. The prosecution's knowing use of false or perjured testimony constitutes a due-process violation if a reasonable likelihood exists that the testimony could have affected the jury's verdict. *State v. Iacona*, 93 Ohio St.3d 83, 97, 752 N.E.2d 937 (2001). The burden is on the defendant to establish (1) that the testimony was false, (2) that the testimony was material, and (3) that the prosecution knew it was false. *Id.* Here we see no non-frivolous issue with regard to the first or third requirements. To the extent that Amanda Draughn and Combs provided differing testimony, it could be that one of them was mistaken, misremembered, or perceived things differently. The fact that Amanda's testimony seemingly conflicted with Combs' testimony in some respects does not establish that those aspects of her testimony were false. But even if we assume, arguendo, that Amanda did provide false testimony, nothing in the record suggests that the State knowingly elicited false testimony. Finally, Rosales' observation that Amanda

admitted lying to police in her unsworn statement at the scene does not establish perjury at trial.[1] In her sworn trial testimony, Amanda admitted falsely telling police after the shooting that she had gone to the gas station to give Rosales rent money. Amanda testified that she actually went there to buy Xanax from him. She explained that she had lied to police because she was afraid of getting into trouble for attempting to buy drugs. Nothing about this aspect of Amanda's testimony is indicative of perjury.

{¶ 16} In his third assignment of error, Rosales challenges the legal sufficiency of the evidence to sustain his convictions. In support, he reasons that the only evidence supporting his convictions is Amanda Draughn's perjured testimony. As set forth above, however, we see no non-frivolous issue regarding the perjury claim. Moreover, when reviewing a challenge to the legal sufficiency of the evidence, we are required to consider all of the evidence admitted at trial, regardless of whether it was admitted erroneously. *State v. Johnson*, 2015-Ohio-5491, 55 N.E.3d 648, ¶ 95 (2d Dist.). We note too that Rosales' convictions are supported by much more than Amanda's testimony. As set forth above, the grandmother of his child testified that he told her he thought he had killed someone. In addition, Rosales himself fled after the shooting and made incriminating recorded statements that constitute admissions of guilt. For the foregoing reasons, his challenge to the legal sufficiency of the evidence is frivolous.

{¶ 17} In his fourth assignment of error, Rosales alleges ineffective assistance of

---

[1] Attached to Rosales' appellate brief as "Exhibit A" is a copy of Amanda Draughn's written statement to police. On October 6, 2017, the State moved to strike this exhibit on the grounds that the statement was not entered into evidence at trial. Upon review, we overrule the State's motion and decline to strike the written statement from the record. Rather than striking the exhibit to Rosales' brief, we simply will not consider it. *See State v. Alford*, 2d Dist. Montgomery No. 25715, 2013-Ohio-5045, ¶ 11 (recognizing that "a party cannot introduce new evidence on appeal").

trial counsel. He contends his attorney provided ineffective assistance by (1) advising him not to testify, (2) failing to present unspecified evidence in support of an involuntary manslaughter charge, and (3) failing to raise unspecified objections at sentencing. Rosales also asserts that his attorney should have (1) objected to the "other-acts" testimony discussed above, (2) contested Amanda Draughn's "perjured" testimony, (3) moved for acquittal under Crim.R. 29, (4) objected to restitution, and (5) objected to consecutive sentences for murder and felonious assault.

{¶ 18} We see no non-frivolous issue with regard to any of the foregoing arguments. "Absent evidence to the contrary, the appellate court must presume that a defendant-appellant's failure to testify was the result of his knowing and intelligent decision." *State v. Copeland*, 2d Dist. Montgomery No. 18711, 2002 WL 63161, *3 (Jan. 18, 2002). Here there is no evidence that Rosales' failure to testify was the result of ineffective assistance of counsel. In fact, Rosales explicitly confirmed to the trial court that the decision not to testify was his.

{¶ 19} We also see no non-frivolous argument concerning defense counsel's failure to pursue an involuntary-manslaughter charge. Rosales neglects to identify any specific evidence his attorney failed to present that would have supported a charge of involuntary manslaughter as a lesser-included offense of felony murder. Additionally, on the record before us, Rosales was not entitled to a jury instruction on involuntary manslaughter as a lesser-included offense of felony murder. He was convicted and sentenced for felony murder based on killing Dallas Draughn as a proximate result of committing felonious assault. We recognize that involuntary manslaughter is a lesser-included offense of felony murder. *State v. Crockett*, 10th Dist. Franklin Nos. 14AP-242,

14AP-248, 2015-Ohio-2351, ¶ 28. A lesser-included offense instruction is warranted, however, only when the evidence is such that the jury reasonably might reject the greater offense and find the defendant guilty of the lesser offense. *Id.*

{¶ 20} The felony-murder statute, R.C. 2903.02(B), provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." The underlying offense here was felonious assault, a second-degree felony offense of violence. The involuntary-manslaughter statute, R.C. 2903.04(A) and (B), provides in relevant part that "[n]o person shall cause the death of another" as a proximate result of committing a felony or a misdemeanor. The primary difference between the felony-murder statute and the involuntary-manslaughter statute is that the former requires the underlying offense to be a first-degree or second-degree felony offense of violence, whereas the latter merely requires that the underlying offense be a felony or a misdemeanor. Here the underlying criminal act, firing a gun at Dallas Draughn, constituted felonious assault by causing or attempting to cause physical harm with a deadly weapon (the firearm), which is a second-degree felony offense of violence. Therefore, if Rosales was guilty at all, he was guilty of committing felony murder. It follows, then, that the jury could not have acquitted him of felony murder but convicted him of involuntary manslaughter. That being so there is no basis to give an involuntary-manslaughter instruction.

{¶ 21} We also see no non-frivolous issue regarding defense counsel's failure to raise unspecified objections at sentencing. Having reviewed the sentencing transcript, we see no sentencing-related error by the trial court. Insofar as Rosales' argument might be directed toward the imposition of consecutive sentences for murdering Dallas Draughn

and committing felonious assault by shooting the minor victim in the arm, the trial court made the requisite findings under R.C. 2929.14(C)(4), which permits consecutive prison terms

> if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 22} Here the trial court made the following findings at sentencing:

> * * * The Court finds that consecutive service is necessary to punish Mr. Rosales and that the consecutive sentence is not disproportionate to

the seriousness of Mr. Rosales' conduct and to the danger he poses to the public.

The court further finds the involved offenses were committed as part of a course of conduct and the harm caused by the two offenses at issue, again murder and felonious assault as it relates to [the minor victim], is so great that a single prison term for the indicated offenses will not adequately reflect the seriousness of Mr. Rosales' conduct.

**{¶ 23}** The foregoing findings satisfied R.C. 2929.14(C)(4), and the record supports them. Moreover, an imposed sentence cannot be reversed unless it is contrary to law or the record clearly and convincingly fails to support the sentence. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22-23. The sentence here is not contrary to law and because the record supports the sentence, we see no potential issue regarding consecutive sentencing. We note too that the trial court properly included its consecutive-sentence findings in the final judgment entry.

**{¶ 24}** Rosales' other arguments also fail to demonstrate a non-frivolous issue for appeal. In our analysis above, we already found no merit to his arguments about other-acts testimony and allegedly perjured testimony by Amanda Draughn. Contrary to Rosales' claim in his appellate brief, his trial counsel also did make a Crim.R. 29 motion for judgment of acquittal. Finally, we see no non-frivolous issue regarding the trial court's modest $2,936.25 restitution order, which was based on a bill for Dallas Draughn's funeral expenses. When considering Rosales' ability to pay, the trial court recognized that he would be in prison indefinitely. It nevertheless concluded that he was healthy, able to work, and capable of making some payments toward the bill while incarcerated. *See* R.C.

5145.16(C)(8)(b) (authorizing twenty-five percent of a prison inmate's pay to be allocated to a restitution obligation). We find no arguable merit to each of Rosales' arguments.

{¶ 25} In his fifth assignment of error, Rosales contends the trial court erred in ordering him to pay restitution and court costs. We just considered the restitution issue above. With regard to court costs, we note that under R.C. 2947.23 a trial court is required to impose court costs against all convicted defendants, even those who are indigent. *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. The trial court may waive costs, however, if the defendant moves to do so. Here Rosales' counsel did request a waiver of court costs in his sentencing memorandum, which the trial court indicated that it had reviewed. But even if that were not sufficient to qualify as a motion, Rosales would remain free to challenge his court costs at any time, even after sentencing, pursuant to R.C. 2947.23(C). In any event, we conclude that the trial court had discretion not to waive courts costs in this case. We see no non-frivolous issue for appeal.

{¶ 26} In his sixth assignment of error, Rosales challenges the trial court's imposition of consecutive sentences for felony murder and felonious assault. We addressed this issue above and need not repeat the analysis here. Rosales also argues under his sixth assignment of error that the trial court misinformed him about parole. Specifically, he contends the trial court incorrectly stated at sentencing that he would be on parole for the rest of his life if ever released from prison. Rosales claims this statement overlooked R.C. 2967.16(A), which provides a mechanism for a paroled prisoner with a life sentence to be granted "final release" from parole no earlier than five years after being released from prison. Although Rosales is correct about R.C. 2967.16, we see no non-frivolous issue for appeal. "When a person is paroled, he or she is released from

confinement before the end of his or her sentence and remains in the custody of the state until the sentence expires or the Adult Parole Authority grants final release." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 36. Absent a grant of final release, then, Rosales would be on parole for the rest of his life, as the trial court stated. The possibility that a final release could cut his parole short was not something the trial court was required to tell him at sentencing. Even when taking a guilty plea, a trial court is not required to discuss parole at all. *Id.* at ¶ 37. That being so, the trial court could not have erred in failing to mention a statutory mechanism that it was not required to address and that someday could work to Rosales' advantage.

{¶ 27} In his seventh assignment of error, Rosales alleges ineffective assistance of appellate counsel based on counsel's failure to raise some of the arguments addressed above. This assignment of error lacks merit. None of the arguments raise non-frivolous issues. Therefore, appellate counsel could not have provided deficient representation by failing to raise them. Rosales also cannot have suffered any prejudice from appellate counsel's representation because this court's independent review would result in new counsel being appointed if any non-frivolous issues did exist.

{¶ 28} We turn now to appointed appellate counsel's *Anders* brief, which states that counsel specifically has considered the following issues: "motion to suppress, sufficiency and manifest weight of the evidence arguments, jury instructions, and sentencing." Counsel has concluded that the foregoing issues lack even arguable merit, and we agree. Rosales' convictions plainly are not based on legally insufficient evidence or against the weight of the evidence. We also have reviewed the jury instructions and have found no arguable error. Likewise, we have found no non-frivolous issues arising

from Rosales' sentencing. In addition to our analysis above, we note with regard to sentencing that the trial court correctly did not merge two of the multiple firearm specifications. Pursuant to R.C. 2929.14(B)(1)(g), the trial court was statutorily required to impose separate sentences for two of the most serious firearm specifications when those specifications are related to certain enumerated offenses which include murder and felonious assault. And, under R.C. 2929.14(C)(1)(a) the sentences for those firearm specifications were required to be served consecutively to each other and consecutively to the sentences for the substantive offenses. With regard to counsel's reference to a suppression motion, the record reflects that Rosales declined to speak to police after his arrest. The only statements he made were during the recorded jailhouse conversations mentioned above. Although Rosales was in custody at that time, his statements on the telephone were not the product of any interrogation by law enforcement. In addition, his telephone calls began with a warning that the conversations were being recorded. Therefore, the trial court correctly found no basis to suppress the statements Rosales made from jail on the telephone.

{¶ 29} Finally, we have conducted our own independent review of the record and have found no non-frivolous issues for appeal. In addition to the various issues addressed and rejected above, the only other issue we have found warranting discussion involves the trial court's failure to merge Rosales' offenses of discharging a firearm into a habitation, felony-murder, and felonious-assault. Felony murder and felonious assault were not subject to merger here, even if they were committed with the same conduct and the same motivation, because they involved separate harm inflicted on two different victims. In addition, Rosales' conviction for discharging a firearm into a habitation did not

merge into either of the other two offenses. Again, even if the offenses were committed with the same conduct and animus, they involved separate, identifiable harms. The gun shots killed Dallas Draughn, they injured K.M., and they endangered the other occupants of the two apartments, thereby creating a harm separate and distinct from the harm experienced by Dallas and K.M. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 205-206 (concluding that attempted murder and discharging a firearm into a habitation did not merge where the defendant pulled up in front of a house and fired numerous shots at people on the porch because the "shootings were directed at the people on the porch, the shots fired endangered those inside the house and thereby created harm distinct from the harm to the attempted-murder victims"). Rosales' shots also caused separate harm to the apartments themselves. *See State v. Grayson*, 2017-Ohio-7175, __ N.E.3d __, ¶ 17-25 (8th Dist.) (holding that felonious assault and discharging a firearm into a habitation did not merge where the defendant filed multiple shots into an occupied house because the harm from the felonious assault was to a person in the house whereas the harm from discharging a firearm was to the structure itself, which did not even need to have people present to obtain a conviction).

{¶ 30} Based on the reasoning set forth above, we affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Michael J. Scarpelli
Lucas Wilder
Avelardo Rosales

Hon. Erik R. Blaine