[Cite as *State v. Cassell*, 2019-Ohio-1668.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27899 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-785/3 |
| | : | |
| EVANS CASSELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of May, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
　　　Attorney for Plaintiff-Appellee

NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 2541 Shiloh Springs Road, Trotwood, Ohio 45426
　　　Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Evans Cassell appeals from the trial court's judgment finding him guilty and sentencing him to 18 years to life in prison based on his guilty plea to complicity to commit murder, with a firearm specification. The judgment of the trial court will be affirmed.

### Factual and Procedural Background

{¶ 2} On March 12, 2017, 20-year-old Taylor Brandenburg was killed by gunfire outside a Dayton home where she had been babysitting. Three individuals, including Cassell, were charged in her death.

{¶ 3} Cassell was indicted on a total of 11 counts: 1) Counts One and Three, complicity to commit murder (proximate result) in violation of R.C. 2903.02(B) and 2923.03(A)(2), unclassified felonies; 2) Counts Two, Five, Six, Seven, and Eight, complicity to commit felonious assault (deadly weapon) in violation of R.C. 2903.11(A)(2) and 2923.03(A)(2), second-degree felonies; 3) Count Four, complicity to commit felonious assault (serious harm) in violation of R.C. 2903.11(A)(1) and 2923.03(A)(2), a second-degree felony; 4) Count Nine, complicity to commit discharge of a firearm on or near prohibited premises (public road) in violation of R.C. 2923.162(A)(3) and (C)(4) and 2923.03(A)(2), a first-degree felony; 5) Count Ten, having weapons under disability (prior offense of violence) in violation of R.C. 2923.13(A)(2), a third-degree felony; and Count Eleven, tampering with evidence (alter/destroy) in violation of R.C. 2921.12(A)(1), a third-degree felony. (Doc. #1.) The complicity to commit murder and felonious assault counts all carried firearm specifications, as did the discharge of a firearm count.

{¶ 4} A jury trial was set for October 31, 2017. On October 25, 2017, Cassell entered a plea of guilty. At the plea hearing, he signed a written plea agreement under which he pled guilty to the Count One complicity to commit murder offense and the

attached firearm specification, in exchange for dismissal of all other counts and specifications. (Doc. #89.) The plea form specified that the court could sentence Cassell to a prison term of 15 years to life on Count One, plus three consecutive years for the firearm specification, and that both prison terms were "mandatory." A box checked on the printed plea form further indicated that Cassell would be subject to "Mandatory * * * Post-Release Control for a period of _____ (3 or 5) years * * *."[1]

{¶ 5} During the hearing on Cassell's plea, and consistent with the plea form, the trial court advised Cassell of the mandatory 18-years-to-life penalty for the offense and specification to which he was pleading. (Transcript of Proceedings ("Tr.") p. 7.) Cassell orally acknowledged that he understood that mandatory penalty. (*Id.*) The court also advised Cassell that he was "not eligible for probation"; Cassell again indicated that he understood. (*Id.*) Soon thereafter, the following exchange took place:

[Trial Court]: All right, do you understand that should you ever be released from prison on parole, that you're going to be subject to a [sic] parole supervision for the rest of your life?

[Cassell]: Yes, sir.

[Trial Court] [to prosecutor]: Is that fairly stated[?]

* * *

[Prosecutor]: Yes.

[Trial Court] [to Cassell]: Do you understand that?

[Cassell]: Yes, sir.

(Tr. p. 8.) Post-release control was never mentioned during the plea colloquy. The court

---

[1] The indicated line was left blank on Cassell's plea form.

accepted the plea and scheduled a sentencing hearing for November 14. (*Id.* at 11.)

{¶ 6} Before sentencing, Cassell's then-counsel moved to withdraw Cassell's guilty plea, to permit counsel to withdraw, and for appointment of new counsel. (Doc. #116.) The motion noted that Cassell had "expressed dissatisfaction with the life sentence" and with his existing attorney. The State responded the same day. The court set those matters for a hearing on November 21, 2017.

{¶ 7} On that hearing date, the trial court granted then-counsel's motion to withdraw and continued Cassell's motion to withdraw his plea for one week, to November 28; the withdrawing attorney objected to the short timeline for new counsel to prepare. On November 27, 2017, the court formally appointed new counsel to represent Cassell. (Doc. #120.)

{¶ 8} At the November 28, 2017 hearing on Cassell's motion to withdraw his plea, new counsel appeared with Cassell and advised the trial court that Cassell had decided "to withdraw the motion to withdraw the guilty plea and to proceed with sentencing in this matter as previously agreed." (Tr. p. 16.) Cassell orally confirmed his desire to proceed with sentencing (*id.* at 17); counsel also signed an entry withdrawing Cassell's motion to withdraw his plea. (*See* Doc. #124.) Two victim impact statements were presented. The trial court sentenced Cassell to 15 years to life for complicity to commit murder, and to three years for the firearm specification, to be served consecutively, for a total sentence of 18 years to life in prison. The "Termination Entry" imposed a sentence of 18 years to life and notified Cassell that, "as part of this sentence * * *, **if** Defendant **is ever released,** [he] **WILL** be supervised by the Parole Board for a period of **LIFE**." (Emphasis sic.) (Doc. #122.) That entry then explained the sanctions for any violation of "post-release control"

(which was not imposed), and the responsibility to pay court costs (which also were not imposed). (*Id.)*

{¶ 9} Cassell appeals, setting forth two assignments of error:

1) Mr. Cassell's plea was not knowingly, voluntarily or intelligently made because he was not given sufficient notice of imposition of post release control or violations of the same, and thus he was not advised of the maximum penalties he faced.

2) The trial court abused its discretion in granting only a one week continuance for Mr. Cassell to consult with counsel and prepare for the hearing on his motion to vacate his plea.

***Assignment of Error #1 – Plea not Knowing, Intelligent, and Voluntary***

*a. Standard of Review*

{¶ 10} In order to comport with due process and be constitutionally valid, a guilty plea must be entered knowingly, intelligently, and voluntarily. *State v. Miller*, 2017-Ohio-478, 84 N.E.3d 150, ¶ 9 (2d Dist.), citing *State v. Bateman*, 2d Dist. Champaign No. 2010CA15, 2011-Ohio-5808, ¶ 5, and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). To determine whether a particular plea met those criteria, " 'an appellate court examines the totality of the circumstances through a *de novo* review of the record to ensure that the trial court complied with constitutional and procedural safeguards.' " (Emphasis sic.) *State v. Redavide*, 2d Dist. Montgomery No. 26070, 2015-Ohio-3056, ¶ 10, quoting *State v. Barner*, 4th Dist. Meigs No. 10CA9, 2012-Ohio-4584, ¶ 7.

{¶ 11} "In order for a plea to be knowing, intelligent, and voluntary, the trial court

must comply with Crim.R. 11(C)." (Citation omitted.) *State v. Russell*, 2d Dist. Clark No. 10-CA-54, 2011-Ohio-1738, ¶ 6. "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty * * *." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8.

{¶ 12} Crim.R. 11(C)(2) requires the court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 13} The Supreme Court of Ohio has urged literal compliance with Crim.R. 11. *See State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need comply only substantially with those requirements. *See, e.g.*, *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must comply strictly with Crim.R.

11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 14} If there is a lack of substantial compliance regarding a certain non-constitutional right, then the reviewing court is to determine whether there was a partial or a total failure to comply with the rule. *State v. Cruz-Ramos*, 7th Dist. Mahoning No. 17 MA 0077, 2019-Ohio-779, ¶ 11, citing *Clark* at ¶ 32. A complete failure to advise of a non-constitutional right requires that the plea be vacated without an analysis of prejudice. *Id.*, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22, 25. "However, if the court's advisement on a non-constitutional right is considered partial compliance with the rule, then the plea cannot be vacated unless the defendant demonstrates prejudice.' *Id.*, citing *Clark* at ¶ 32, 40.

b. *Law concerning Notice of Post-Release Control*

{¶ 15} Under Crim.R. 11(C)(2)(a), a trial court's responsibility to determine that a defendant's plea is voluntary includes assuring that the defendant has an " 'understanding of the nature of the charges and of the maximum penalty involved * * *.' " *State v. Riddle*, 2017-Ohio-1199, 88 N.E.3d 475, ¶ 12 (2d Dist.), quoting *State v. Jones*, 2d Dist. Montgomery No. 24772, 2013-Ohio-119, ¶ 6. "The 'maximum penalty' includes any mandatory post-release control sanction[.]" *Jones* at ¶ 7. "Thus if the defendant will be subject to a period of post-release control, to comply with Crim.R. 11[,] the court must inform the defendant of post-release control." *Id.*

{¶ 16} In order to properly inform a defendant of post-release control, a trial court must both "notify [the] offender at the sentencing hearing about postrelease control and * * * incorporate postrelease control into its sentencing entry." *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 11, quoting *State v. Jordan,* 104 Ohio St.3d

21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 22. Furthermore, "statutorily compliant notification" includes "notifying the defendant of the details of the postrelease control and the consequences of violating postrelease control," including whether postrelease control is discretionary or mandatory and the term of supervision. *Id.*, citing *State v. Qualls,* 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 18, *Jordan* at ¶ 22-23, and *State v. Billiter,* 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, ¶ 12.

{¶ 17} While the sentencing entry must incorporate the post-release control notifications given at the sentencing hearing, it "need not repeat those notifications verbatim." *Id.* at ¶ 13. Rather, "a minimally compliant entry must provide the [Adult Parole Authority] the information it needs to execute the postrelease-control portion of the sentence." *Id.*

*c. Cassell's Guilty Plea*

{¶ 18} Cassell contends that his guilty plea was not knowing, intelligent, and voluntary because the trial court failed to fully inform him of the terms of post-release control to which he would be subject upon his release from prison. Specifically, Cassell faults the court for not notifying him "of potential penalties for post[-]release control violations."

{¶ 19} Under R.C. 2967.28, individuals convicted of unclassified felonies are not subject to post-release control. *See, e.g., McCain v. Huffman*, 151 Ohio St.3d 611, 2017-Ohio-9241, 91 N.E.3d 749, ¶ 3; *Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, at ¶ 3, fn. 1; *State v. Clark*, 119 Ohio St.3d 239, 244, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 36. "Instead, such a person is either ineligible for parole or becomes eligible for parole" under R.C. 2967.13(A) after serving the specified portion of his or her prison term.

(Citations omitted.) *Clark* at ¶ 36.

{¶ 20} Complicity to murder is an unclassified felony to which the post-release control statute does not apply. *State v. Bump*, 11th Dist. Ashtabula No. 2010-A-0028, 2011-Ohio-6687, ¶ 53. Rather, a conviction of complicity to murder is subject to parole eligibility under R.C. 2967.13(A)(1). *See State v. Tuggle*, 6th Dist. Lucas No. L-09-1317, 2010-Ohio-4162, ¶ 5.

{¶ 21} During Cassell's sentencing hearing, the trial court orally advised Cassell that if he ever were released from prison on parole, he would be "subject to * * * parole supervision for the rest of [his] life." (Tr. p. 8.) Cassell indicated that he understood. (*Id.*) Under existing law, even that advisement was unnecessary. *See State v. Rosales*, 2d Dist. Montgomery No. 27117, 2018-Ohio-197, ¶ 26, citing *State v. Clark*, 119 Ohio St.3d 239, 244, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 37 ("Even when taking a guilty plea, a trial court is not required to discuss parole at all."). "Because parole is not certain to occur, trial courts are not required to explain it as part of the maximum possible penalty in a Crim.R. 11 colloquy." *Clark* at ¶ 37, citing *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.E.2d 203 (1985). Accordingly, we have determined that a trial court's "arguably broad" statement telling a defendant "that he could be on parole for the rest of his life" was neither improper nor prejudicial to the defendant. *State v. Shorter*, 2d Dist. Montgomery No. 28008, 2018-Ohio-5164, ¶ 17.

{¶ 22} The trial court's similar statement to Cassell likewise was neither improper nor prejudicial. "[T]he trial court was not required to explain parole during the plea colloquy." *Id.*, citing *Rosales* and *Clark*. Consequently, Cassell cannot have been

prejudiced by the court's undertaking to make him aware of parole supervision.[2]

{¶ 23} Cassell's first assignment of error is overruled.

***Assignment of Error #2 – Insufficient Time for New Counsel to Prepare***

{¶ 24} In his second assignment of error, Cassell argues that the trial court abused its discretion by allowing only one week between its permitting Cassell's original attorney to withdraw and the new hearing date set on Cassell's motion to withdraw his guilty plea (which instead became Cassell's sentencing hearing). He urges that the trial court erred by going forward on that date because his newly-appointed attorney had not had adequate time to review the circumstances of Cassell's guilty plea.

{¶ 25} We review decisions regarding continuances for an abuse of discretion. *See State v. Danon*, 2018-Ohio-419, 105 N.E.3d 596, ¶ 28 (2d Dist.). Trial courts possess "broad discretion to grant or deny a motion for a continuance." *Id.*, citing *State v. Bones*, 2d Dist. Montgomery No. 26017, 2015-Ohio-784, ¶ 61. In exercising that discretion, courts should consider "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which give [sic] rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Id.*, quoting *State v. Bocock*, 2d Dist. Montgomery No. 22481, 2008-Ohio-5641, ¶ 23. "An appellate court must not reverse the

---

[2] Although Cassell's printed plea form has a check mark in the box regarding mandatory post-release control and his Termination Entry mentions sanctions for violation of post-release control, Cassell has not assigned any error or alleged any prejudice based on those written references to post-release control.

denial of a continuance unless there has been an abuse of discretion." (Citations omitted.) *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981).

{¶ 26} Failure to object to a continuance decision amounts to a waiver of all but plain error. *See State v. Chappell*, 2d Dist. Greene No. 2009-CA-20, 2010-Ohio-112, ¶ 6. "An error qualifies as plain error only if the error is obvious and but for the error the outcome of the proceeding clearly would have been otherwise." *Id.*, quoting *State v. Molen*, 2d Dist. Montgomery No. 21941, 2008-Ohio-6237, ¶ 9.

{¶ 27} As Cassell acknowledges, in this instance, neither he nor his new attorney requested a continuance of the November 28, 2017 hearing. Instead, on that date, Cassell's counsel immediately advised the trial court that Cassell had decided "to withdraw the motion to withdraw the guilty plea and to proceed with sentencing * * *." (Tr. p. 12.) Cassell agreed with that statement. (*Id.* at 12-13.) Because Cassell raised no objection to going forward with sentencing on that date, he has waived all but plain error. *See Chappell* at ¶ 6.

{¶ 28} The record discloses no reason to conclude that the outcome of Cassell's case would have been different if the trial court had postponed the hearing on Cassell's motion to withdraw his guilty plea to a later date. At the November 28 hearing, Cassell's newly-appointed counsel stated that he (the attorney) and Cassell had "discussed the options that were available to [Cassell] with regard to the plea that he previously had entered into," and that "based on those conversations * * * it's my (the attorney's) understanding at this point that it is [Cassell's] decision to withdraw the motion to withdraw the guilty plea and to proceed with sentencing in this matter as previously agreed." (Tr. p. 16.) Cassell's decision to abandon the effort to withdraw his guilty plea was made without

additional comment by Cassell and after consultation with counsel.

{¶ 29} Even before sentencing, "the right to withdraw a plea is not absolute and a trial court retains discretion to overrule a pre-sentence plea-withdrawal motion." *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181, ¶ 7. After conducting a hearing on such a motion, "the trial court must 'determine whether [the defendant] has a reasonable and legitimate basis' for the withdrawal, rather than '[a] mere change of heart.' " *State v. Bush*, 2d Dist. Clark No. 2018-CA-13, 2018-Ohio-5272, ¶ 10, quoting *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Factors the trial court may consider in making that determination include:

> (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; * * * [5] whether the timing of the motion was reasonable; [6] the reasons for the motion; [7] whether the defendant understood the nature of the charges and potential sentences; and [8] whether the accused was perhaps not guilty or had a complete defense to the charge.

(Brackets sic.) *State v. Askew*, 2d Dist. Montgomery No. 20110, 2005-Ohio-4026, ¶ 10-11, quoting *State v. Cuthbertson*, 139 Ohio App.3 895, 898-899, 746 N.E.2d 197 (7th Dist.2000).

{¶ 30} Furthermore, "[w]hen a defendant discovers before sentencing the particular sentence a trial court intends to impose, * * * a pre-sentence motion to vacate his plea ordinarily should be treated as a post-sentence motion." *Id.* at ¶ 8. We apply the more stringent "manifest injustice" post-sentence standard to such motions because "a

defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise." *Id.* at ¶ 7-8, citing *State v. Wallen*, 2d Dist. Montgomery No. 21688, 2007-Ohio-2129, ¶ 22. Given that Cassell knew when he moved to withdraw his guilty plea what sentence the court intended to impose, his motion to withdraw his plea was subject to the more rigorous "manifest injustice" standard.

{¶ 31} Under either standard, nothing in the record suggests what would have been different if the court had continued the hearing on Cassell's motion to withdraw, or how Cassell was prejudiced by proceeding with sentencing. Although withdrawal of the motion to withdraw meant that no hearing occurred on that motion, the only arguable "reasonable and legitimate basis" for withdrawing his plea as set forth in that motion was Cassell's assertion that he "was not the shooter" and "has defenses." We cannot say that a trial court weighing the factors enumerated in *Askew* and discussed above would have granted Cassell leave to withdraw his guilty plea.

{¶ 32} Because Cassell has failed to demonstrate that the trial court committed error, plain or otherwise, as to the timing of the hearing on a plea-withdrawal motion that Cassell withdrew, his second assignment of error is overruled.

### *Conclusion*

{¶ 33} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck
Michael P. Allen
Nicole Rutter-Hirth
Hon. Gregory F. Singer