[Cite as *State v. Kerr*, 2016-Ohio-965.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26686 |
| | : | |
| v. | : | Trial Court Case No. 2014-CRB-9043 |
| | : | |
| MICHAEL S. KERR | : | (Criminal Appeal from |
| | : | Municipal Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of March, 2016.

. . . . . . . . . . .

TROY B. DANIELS, Atty. Reg. No. 0084957, Assistant City of Dayton Prosecutor, 335 West Third Street, Room 372, Dayton, Ohio 45402
       Attorney for Plaintiff-Appellee

ANTOINETTE M. DILLARD, Atty. Reg. No. 0083191, 120 West Second Street, Suite 1420, Dayton, Ohio 45402
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Michael S. Kerr, appeals from his conviction in the Dayton Municipal Court for domestic violence and assault. Specifically, Kerr challenges the trial court's decision to allow a recorded 911 call to be played during trial and admitted into evidence. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On December 24, 2014, a complaint was filed charging Kerr with one count of domestic violence in violation of R.C. 2919.25(A)(1), and one count of assault in violation of R.C. 2903.12(A), both misdemeanors of the first degree. The charges stemmed from allegations that Kerr choked and hit his girlfriend, Megan Elswick, during the early morning hours of December 23, 2014, at a residence located on 154 Cliff Street, Dayton, Ohio. Officers were dispatched to the scene after the victim called 911 and reported that Kerr had attacked her. Kerr was not present when the officers arrived; however, he was arrested at that same residence the following day.

{¶ 3} Following his arrest, Kerr pled not guilty to the charges and the matter proceeded to a bench trial. During trial, the State presented testimony from Sergeant Brian Lewis of the Montgomery County Sheriff's Office and Officers Randy Betsinger and Joseph Watson of the Dayton Police Department. The victim, Elswick, did not testify or appear at trial.

{¶ 4} Sergeant Lewis testified that he is the records keeper for the Montgomery County Regional Dispatch Center ("Center"). According to Lewis, the Center digitally

stores 911 dispatch records on a secure server. Lewis indicated that the records include audio recordings of 911 calls and incident history details, which provide the date and time of the calls and a brief summary of the information provided by the caller. Lewis further explained how he retrieves the records and copies them to compact discs for purposes of records requests. Lewis verified that the 911 call at issue was placed on December 23, 2014, at 2:42 a.m., and that a true and accurate copy of the audio recording of the call was provided to the State pursuant to its records request. Lewis also identified the specific incident history detail sheet that corresponded to the call, which was subsequently admitted into evidence along with the audio recording.

{¶ 5} The audio recording was played at trial and admitted into evidence over the defendant's objection. The recording included two 911 calls made by a female caller on the date in question. The first call was mostly inaudible and was disconnected shortly into the conversation. However, it can be gleaned from the recording that the caller was out of breath and panicked. The operator who answered the call noted in the incident history detail that before the phone disconnected, the caller stated "her boyfriend just choked her and punched her[.]" *See* State's Exhibit A.

{¶ 6} After the caller's phone disconnected, the operator attempted to call back three times without any success. However, moments later, the same caller called 911 a second time. The recording of the second call was audible and the caller reported to the operator that her boyfriend had just choked her and hit her face. The caller did not identify herself, but she identified Michael Kerr as her boyfriend and stated that her location was 154 Cliff Street. The caller also indicated that Kerr was still inside the residence and that he had wielded a knife, which was currently lying above the television

in the living room. The caller further advised that her neck hurt and that she had sustained some scratches during the altercation, but claimed that she did not require hospitalization. Throughout the conversation she was concerned her cell phone battery was going to die and that she would not be able to leave the residence.

{¶ 7} Officers Betsinger and Watson testified that on the morning in question, they were dispatched to the residence located at 154 Cliff Street on a domestic violence call. Betsinger testified that when he arrived at the residence, he encountered a crying, emotionally distressed female in the front-yard who identified herself as Megan Elswick. According to Betsinger, Elswick reported that Kerr was no longer at home, having fled the scene in his red Hyundai. During the encounter, both officers observed bruising/redness on Elswick's neck and scratches/cuts on her face and forearm. Specifically, Betsinger testified that there was bruising on the sides of Elswick's neck, a cut on her nose, and a cut on her forearm that was bleeding. Watson testified that he took photographs of these injuries the same day. The photographs were admitted as evidence after Watson identified them at trial.

{¶ 8} Continuing, Betsinger testified that the following day, he was dispatched to 154 Cliff Street again after Kerr's red Hyundai was seen in the driveway. Betsinger testified that he knocked on the door of the residence and Kerr answered. When Kerr answered, Betsinger asked him if he knew why he was there, and Kerr stated that he believed it was due to what had occurred the night before. According to Betsinger, Kerr acknowledged that a physical altercation had occurred with Elswick and described the altercation to Betsinger after he was arrested and Mirandized. Betsinger also testified that Kerr confirmed 154 Cliff Street as his address while completing his booking slip for

jail.

{¶ 9} At the close of the State's case, the defense renewed its objection to the admission of the 911 call recording on grounds that the recording contained inadmissible hearsay, violated Kerr's right of confrontation, and was not properly authenticated. After hearing each of the parties' arguments, the trial court overruled the objection. The defense also moved for a dismissal under Crim.R. 29, which was also overruled. The trial court then entered its verdict, finding Kerr guilty of both domestic violence and assault. At sentencing, the trial court merged the offenses and imposed a 30-day jail term with credit for 16 days served and then suspended the remaining 14 days. The trial court also imposed one year of supervised community control, a suspended $200 fine, and court costs.

{¶ 10} Kerr now appeals from his conviction, raising two assignments of error for review.

**Assignments of Error**

{¶ 11} For purposes of convenience and clarity, we will review Kerr's assignments of error together. They are as follows:

I.   APPELLANT'S RIGHT TO DUE PROCESS AND CONFRONTATION, UNDER THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, WAS VIOLATED BY THE TRIAL COURT ALLOWING INTO EVIDENCE STATEMENTS OF MEGAN ELSWICK THAT WERE BOTH TESTIMONIAL AND HEARSAY.

II.     THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ALLOWING THE STATE TO INTRODUCE A 911 CALL WITHOUT PROPER AUTHENTICATION.

**{¶ 12}** Under the foregoing assignments of error, Kerr generally alleges that the trial court erred in admitting the audio recording of the 911 call into evidence.   In support of his this claim, Kerr contends the recording: (1) contained inadmissible hearsay; (2) violated his constitutional right of confrontation; and (3) was not properly authenticated.

**{¶ 13}** Before reviewing each of Kerr's claims, we note that a trial court has broad discretion to admit or exclude evidence, and its exercise of that discretion will not be disturbed on appeal absent an abuse of discretion.   *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 14, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43.   "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary."   (Citation omitted.)   *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.   "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary."   *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N .E.2d 597 (1990).   "A decision is unreasonable if there is no sound reasoning process that would support that decision."   *Id.*

(1) Hearsay

**{¶ 14}** Kerr contends that the statements Elswick made during the 911 call are

inadmissible hearsay because the statements do not properly fall under the excited utterances hearsay exception set forth in Evid.R. 803(2). We disagree with Kerr's claim.

{¶ 15} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In general, hearsay is not admissible; however, there are several exceptions to the hearsay rule. Evid.R. 802 and Evid.R. 803. Pursuant to Evid.R. 803(2), one such exception is a hearsay statement that is an "excited utterance." An "excited utterance" is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.*

{¶ 16} In determining whether a hearsay statement is admissible as an excited utterance, one must establish:

"(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still [her] reflective faculties and thereby make [her] statements and declarations the unreflective and sincere expression of [her] actual impressions and beliefs, and thus render [her] statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over [her] reflective faculties, so that such domination continued to remain sufficient to make [her] statements and declaration the unreflective and sincere expression of [her] actual impressions and beliefs, (c) that the statement or declaration

related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in her statement or declaration."

*State v. King*, 2d Dist. Montgomery No. 25151, 2013-Ohio-1694, ¶ 17, quoting *State v. Duncan*, 53 Ohio St.2d 215, 373 N.E.2d 1234 (1978), paragraph one of the syllabus.

{¶ 17} We have held that "911 calls are usually admissible under the excited utterance or the present sense impression exception to the hearsay rule." *Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624 at ¶ 12, citing *Ratliff v. Brannum*, 2d Dist. Greene No. 2008-CA-5, 2008-Ohio-6732, ¶ 132. (Other citations omitted.) " 'The controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection.' " *State v. Crowley*, 2d Dist. Clark No. 2009 CA 65, 2009-Ohio-6689, 2009 WL 4893283, *5, quoting *State v. Humphries*, 79 Ohio App.3d 589, 598, 607 N.E.2d 921 (12th Dist.1992). "Whether a statement is made in response to a question from the dispatcher is relevant, but not determinative." *Norris* at ¶ 12.

{¶ 18} Upon reviewing the record, we find that Elswick's statements to the 911 operator qualify as excited utterances, as the recording indicates that Elswick's statements were made while under the stress and excitement caused by the physical altercation with Kerr. This is supported by the fact that Elswick reported that Kerr had "just" choked her and hit her in the face, which indicates the altercation had occurred only moments before the call. Elswick also reported that Kerr was still inside the residence, which indicates an ongoing source of stress and excitement. While Elswick sounded calmer during the second 911 call, she nevertheless was out of breath throughout most

of that call, and her overall tone of voice indicated that she was upset by the situation and concerned about her ability to leave the residence. All of these factors support the conclusion that the statements Elswick made during the 911 call were related to the startling occurrence with Kerr, and were spontaneous, unreflective, and a sincere expression of what had occurred. Accordingly, we do not find the trial court abused its discretion in admitting Elswick's statements under the excited utterance exception to the hearsay rule.

{¶ 19} For the foregoing reasons, Kerr's hearsay argument is overruled.


(2) Right of Confrontation

{¶ 20} Kerr also contends that since Elswick did not testify at trial, the statements she made during the 911 call should not have been admitted into evidence because they were testimonial in nature and violated his Sixth Amendment right to confront the witnesses against him. We again disagree with Kerr's claim.

{¶ 21} "[T]he [United States] Supreme Court has recognized that a defendant's Sixth Amendment right to confront witnesses against him is violated when an out-of-court statement that is testimonial in nature is admitted into evidence without the defendant having had the opportunity to cross-examine the declarant." *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 26, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶ 22} Testimonial statements include statements " 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *State v. Kelley*, 2d Dist. Clark No.

2011 CA 37, 2012-Ohio-1095, ¶ 58, quoting *Crawford at 52.* " '[S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' " *Eicholtz* at ¶ 26, quoting *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), paragraph one of the syllabus.

**{¶ 23}** "Typically, 911 calls made to report an ongoing emergency that requires police assistance to resolve that emergency are not 'testimonial' in nature and therefore the Confrontation Clause does not apply." (Citations omitted.) *State v. McDaniel*, 2d Dist. Montgomery No. 24423, 2011-Ohio-6326, ¶ 24. "We have generally held that a 911 call made by a domestic assault victim is not testimonial in nature and that, where the excited utterance exception to the hearsay rule applies, the admission of such a statement does not violate the Sixth Amendment right to confrontation of witnesses." (Citations omitted.) *Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624 at ¶ 13.

**{¶ 24}** In this case, Kerr contends that Elswick's statements to the 911 operator were testimonial in nature because they did not concern an ongoing emergency. For the reasons discussed under our excited utterance analysis, we do not find this to be the case. Specifically, Elswick called 911 seeking assistance and advised the 911 operator that she had "just" been injured by Kerr and that Kerr was still inside the residence. Elswick also indicated that Kerr had wielded a knife, which was lying above the television, and thus still accessible to him. Elswick's breathlessness and tone of voice also indicate

that there was an ongoing threat. In addition, when Officer Betsinger arrived at the scene, he observed that Elswick was still emotionally distraught and upset from the incident. Taking these facts together, it is reasonable to conclude that Elswick's statements to the 911 operator were related to an ongoing emergency. As a result, it was not an abuse of discretion for the trial court to conclude that Elswick's statements were nontestimonial and did not implicate Kerr's right of confrontation.

**{¶ 25}** For the foregoing reasons, Kerr's confrontation argument is overruled.

(3) Authentication

**{¶ 26}** Lastly, Kerr contends that the audio recording of the 911 call was inadmissible because the State failed to authenticate the identity of the 911 caller, claiming there was no evidence offered at trial establishing that the caller was Elswick. We once again disagree.

**{¶ 27}** Evid.R. 901(A) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the material in question is what its proponent claims."

**{¶ 28}** "[W]e have held that 911 recordings are sufficiently authenticated when the keeper of such records testifies that he or she keeps such records, about how such records are recorded and stored or transferred to CDs, and about how they are retrieved from the system." *Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624 at ¶ 24, citing *Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302 at ¶ 30-31. "The threshold standard for authenticating evidence pursuant to Evid.R. 901(A) is low; it does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of

fact to conclude that the evidence is what its proponent claims it to be." *Id.*, citing *State v. Arrone*, 2d Dist. Greene No. 2005 CA 89, 2006-Ohio-4144, ¶ 146.

{¶ 29} In this case, Sergeant Lewis testified regarding the storage and retrieval of the 911 call that triggered the dispatch to 154 Cliff Street on December 23, 2014. Lewis also confirmed that the audio recording at issue was a true and accurate copy of the call. On the recording, the caller did not identify herself, but she told the operator that she was located at 154 Cliff Street, that Kerr was her boyfriend, and described the choking incident and her injuries. When Officers Betsinger and Watson arrived at the Cliff Street address they encountered a female who identified herself as Megan Elswick, and who had injuries consistent with those described by the caller. Moreover, Kerr does not dispute that he was Elswick's boyfriend, and the record indicates that he admitted to Betsinger that he had engaged in a physical altercation with Elswick. Based on the foregoing, it was reasonable for the trial court to conclude that Elswick was the 911 caller and that the 911 recording was properly authenticated.

{¶ 30} For the foregoing reasons, Kerr's authentication argument is overruled.

## Conclusion

{¶ 31} Having overruled all the arguments raised by Kerr in his two assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Troy B. Daniels
Antoinette M. Dillard
Edward C. Utacht, sitting by assignment, (c/o Dayton Municipal Court)