[Cite as *State v. Easterling*, 2019-Ohio-2470.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-33 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-189 |
| | : | |
| BRIAN K. EASTERLING | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 20th day of June, 2019.

. . . . . . . . . .

DAVID M. MORRISON, Atty. Reg. No. 0084368, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. No. 0013841, 1160 E. Dayton-Yellow Springs Road, Fairborn, Ohio 45324
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Brian K. Easterling was convicted after a jury trial of domestic violence, a third-degree felony, and obstructing official business, a second-degree misdemeanor. The trial court sentenced him to concurrent sentences totaling 36 months in prison. Easterling appeals from his convictions, raising seven assignments of error. For the following reasons, the trial court's judgment as to obstructing official business will be affirmed; the judgment as to domestic violence will be modified to a first-degree misdemeanor, the sentence for domestic violence will be modified to the maximum 180 days in jail, and the judgment will be affirmed as modified. Easterling will be ordered released from custody on this matter, subject to any detainers, hold orders, or other orders that would require his continued imprisonment or detention.

## I. Factual and Procedural History

{¶ 2} The State's evidence at trial established the following facts.

{¶ 3} On March 1, 2018, Easterling, then 43 years old, and his 78-year-old father, Ernest Easterling,[1] resided together in Xenia. Easterling's 51-year-old brother, Michael Shane Easterling ("Shane"), lived approximately one and a half blocks away. Shane stated that it would take one to two minutes to drive from one residence to the other.

{¶ 4} Sometime between 11:00 p.m. and midnight on March 1, Ernest drove to Shane's home and "beat" on Shane's door. Shane testified that Ernest appeared "very stressed out" and "dazed." Shane stated that Ernest was acting normally, but appeared "very anxious" and "very agitated." Shane noticed that Ernest (who shaved his head)

---

[1] Because Easterling's family members share the same surname, we will refer to his family members by their first names for the sake of clarity.

had a lump on the back of his head. Shane had seen his father earlier in the day, and Ernest did not have a lump on his head at that time. Shane testified that his father had "thin skin" on his arms, which bled easily, but he had never seen his father develop a knot from someone just touching him.

{¶ 5} Shane testified, over objection,[2] that Ernest asked him "to please come and get Brian [Easterling] out of his house because Brian had just punched him and knocked him to the floor." Shane responded to his father that he "wasn't messing with Brian. That he's not worth me going to jail over." Shane calmed his father down and called the police. Shane then drove his father home in his father's truck. The two men sat in the truck awaiting the police. Shane repeatedly offered to drive his father to the hospital, but Ernest refused to go.

{¶ 6} Xenia Police Officers Atkins and Roelker arrived almost instantaneously. Ernest remained in the truck, and Shane stood outside the vehicle. Officer Roelker spoke with Ernest, while Officer Atkins spoke with Shane and another man. The officers offered to call an ambulance, but Ernest refused medical treatment.

{¶ 7} While Shane was speaking with Officer Atkins, Easterling came onto the front porch and walked to the edge of the steps, approximately 10 feet from the front door. Officer Atkins testified that he started to approach Easterling, told Easterling that he needed to talk with Easterling, and told Easterling not to go back into the house. Easterling, however, turned around and started back toward the front door. Officer Atkins continued to tell Easterling to stop and not go back into the house.

---

[2] The trial court ruled that Ernest's statement to Shane was admissible as an excited utterance.

{¶ 8} Shane told Officer Atkins that Easterling was going to lock the door and they were not going to be able to enter. In response, Officer Atkins went to the front door and grabbed the door. Atkins stated that Easterling slammed the door shut. Shane testified that Easterling was forcibly holding the door closed and got into a "pushing match" with the officer. Officer Roelker then went to the front door to assist Officer Atkins, and the two officers pushed their way in. The officers struggled briefly with Easterling while arresting him. Officer Atkins testified that Easterling's actions hindered his ability to perform his official duties.

{¶ 9} Officer Anthony Vitale came to Easterling's residence to assist Officers Atkins and Roelker. He was asked to take photographs of Ernest's reported injuries. Ernest was still seated in the passenger seat of his vehicle. Officer Vitale took photographs of the outside of the residence, of Ernest taken from the outside of the truck, and of the back right side of Ernest's head. Vitale testified that he personally observed Ernest's head, and there appeared to be a "slight swelling to the area where I took photos." Officer Vitale stated that he saw small red marks in that area.

{¶ 10} The parties stipulated that Easterling had two or more prior convictions for domestic violence.

{¶ 11} On March 12, 2018, Easterling was indicted for domestic violence and obstructing official business. The domestic violence charge included an allegation that Easterling had previously been convicted of domestic violence three times – twice in Xenia Municipal Court (Case Nos. 05 CRB 1759 and 12 CRB 1150) and once in the Greene County Court of Common Pleas (Case No. 02 CR 862). The existence of the prior convictions elevated the domestic violence charge to a third-degree felony. *See*

R.C. 2919.25(D)(4).

{¶ 12} Trial was scheduled for May 21, 2018. On May 3, Easterling requested a continuance of the trial date on the ground that his counsel had a scheduling conflict. The court granted the motion and reset the matter for noon on June 4, 2018.

{¶ 13} Ernest died of an unrelated illness on May 28, 2018. On the morning of June 4, 2018, Easterling filed a motion in limine, seeking to preclude the admission of statements made by Ernest to the Xenia police officers and Ernest's written statement. Easterling argued that the admission of these statements would violate the Confrontation Clause. The trial court did not rule on the motion before the parties appeared for trial.

{¶ 14} On June 4, prior to beginning the trial and outside the presence of prospective jurors, the trial court invited the parties to place on the record the status of any plea negotiations. Defense counsel stated that his understanding of the procedure under *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), was that the trial court needed to be satisfied that plea negotiations were made, that Easterling was aware of the plea negotiations, and that Easterling's decision regarding the plea was made with full understanding of what those plea negotiations were. The court then questioned Easterling about the plea negotiations, and Easterling repeatedly stated that he did not "understand any of this." When Easterling stated that he had chosen to go to trial, the trial court indicated that the trial would proceed.

{¶ 15} Defense counsel told the trial court that the State had offered a plea whereby Easterling would pled to domestic violence as a fourth-degree felony and the case would be "administratively terminated today." The trial court responded that the State had made that offer during the previous week and that the offer had been rejected

by Easterling. Defense counsel agreed that the plea had been rejected, but noted that the rejection occurred within 24 hours of Ernest's death. The court then had the prospective jurors brought into the courtroom to begin jury selection.

{¶ 16} Before the State called its first witness (Shane), the State brought to the court's attention that it had not addressed the motion in limine. The court invited arguments from counsel. Defense counsel argued that the admission of statements by Ernest to the police would violate the Confrontation Clause. Counsel further stated that he had recently become aware that the State intended to offer statements made by Ernest to Shane; defense counsel argued that these statements were inadmissible hearsay. The prosecutor responded that Ernest's statements to Shane fell within a hearsay exception and were not testimonial. The trial court provisionally overruled the motion, stating that it would "allow the testimony to develop" and that defense counsel could object when he felt an objection was appropriate.

{¶ 17} The trial proceeded with three witnesses from the State; Easterling did not call any witnesses. Through cross-examination of the State's witnesses, Easterling attempted to show that Ernest was alcoholic and prone to falling and that Shane's testimony was not credible due to animosity between the brothers. During closing argument, defense counsel further argued that Easterling did not obstruct official business, because his actions delayed his arrest by only 90 seconds, per Officer Atkins's testimony.

{¶ 18} The jury found Easterling guilty of both domestic violence and obstructing official business; the verdict form for domestic violence did not require a finding regarding Easterling's prior convictions, and it did not reference the degree of the offense. After a

presence investigation, the trial court imposed 60 days for obstructing official business and a maximum 36 months for domestic violence as a third-degree felony, to be served concurrently.

{¶ 19} Easterling appeals, raising seven assignments of error. We will address them in a manner that facilitates our analysis.

## II. Plea Negotiations

{¶ 20} Easterling's first and second assignments of error concern the plea bargaining process. His first assignment claims that he received ineffective assistance of counsel during plea negotiations. His second assignment claims that the trial court erred in not allowing him to explain his reasons for turning down the proposed plea agreement.

{¶ 21} The Sixth Amendment to the United States Constitution guarantees a defendant the effective assistance of counsel at "critical stages of a criminal proceeding," including during the plea bargaining process. *E.g.*, *Lafler*, 566 U.S. at 162, 165, 132 S.Ct. 1376, 182 L.Ed.2d 398; *Lee v. United States*, __ U.S. __, 137 S.Ct. 1958, 1964, 198 L.Ed.2d 476 (2017); *State v. Romero*, Ohio Slip Opinion No. 2019-Ohio-1839, ¶ 14. When a defendant alleges ineffective assistance of counsel arising from the plea bargaining process, the defendant must satisfy the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Romero* at ¶ 14.

{¶ 22} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable

probability that, but for the errors, the outcome of the case would have been different. *See Strickland* at 688; *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 23} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Id.* at 688. A defendant is entitled to "reasonable competence" from his or her attorney, not "perfect advocacy." *See Maryland v. Kulbicki*, 136 S.Ct. 2, 5 (2015), citing *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.).

{¶ 24} With respect to claims of ineffective assistance regarding plea negotiations, we have held that a defendant must demonstrate that (1) he or she was offered a plea agreement; (2) his or her defense counsel provided legally unsound advice by recommending that he reject the offer; (3) he or she would have entered into the agreement but for counsel's unsound advice; (4) the offer would not have been withdrawn; (5) the trial court would have approved the agreement; and (6) the sentence pursuant to the agreement would have been more favorable than the sentence actually imposed by the court. *State v. Thompson*, 2d Dist. Montgomery No. 27924, 2018-Ohio-4689, ¶ 11, citing *Lafler* at 162-164 and *State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 32-33.

{¶ 25} The court conducted a *Lafler* hearing[3] shortly before trial. During that hearing, Easterling repeatedly stated that he did not understand the plea negotiations, and he seemed confused about what was occurring during the *Lafler* hearing. However, Easterling told the court that he had decided to go to trial. The basis for that decision was not discussed. Defense counsel described a plea agreement that had been offered by the State, but the court noted, and defense counsel agreed, that the offer had been rejected. Defense counsel indicated that the rejection occurred within a day of Ernest's death. There was no discussion about the reasoning behind the rejection, including whether the rejection was based on legal advice from defense counsel. Neither Easterling nor defense counsel asked to place the reasoning on the record.

{¶ 26} On appeal, Easterling contends that his defense counsel did not properly

---

[3] We note the parties' briefs refer to the pretrial on-the-record discussion of a plea offer and its rejection as a "*Lafler* hearing," but that is a misnomer. In *Lafler*, the United States Supreme Court indicated the trial court could have conducted a hearing, at the point after the jury's guilty verdict and before sentencing, to flesh out defendant's post-verdict and pre-sentencing claim that he had received ineffective assistance in plea negotiations before trial. In situations where the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial, "the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea." *Lafler*, 566 U.S. at 171, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). In other situations, such as when the offer was to plead to lesser charges, the prosecution may be required to reoffer the plea proposal. *Id.*

The procedure utilized in the case before us, where the trial court assures that the defendant is aware of a plea offer and accepts or rejects it on the record, is a prophylactic measure to document a plea offer and its rejection. That is not a true "*Lafler* hearing" where the defendant has the opportunity to raise ineffective assistance of counsel in previous plea negotiations. In fact, case law supports the notion that a court, pre-trial, should not inquire into the reasons for defendant's rejection of a plea offer or counsel's specific advice because that could interfere with attorney-client privilege or unwittingly reveal defense trial tactics. *See, e.g., United States v. Quezada-Trujillo*, D.N.M. No. 17-CR-578 WJ, 2018 WL 1662548, *1-3 (Apr. 5, 2018). Nevertheless, we refer to the pretrial record in this case as a "*Lafler* hearing," because that is what the parties called it.

advise him of the consequences of his father's death as it related to the State's ability to prosecute him without his father's appearance as a witness. Easterling indicates that he learned on the morning of trial that his brother would be testifying about statements that their father made concerning the domestic violence. Easterling thus claims that his decision to go to trial was not an informed decision.

{¶ 27} "A claim of ineffective assistance of counsel cannot be asserted on direct appeal if it relies on matters outside the record." *State v. Harris*, 2d Dist. Montgomery No. 27179, 2017-Ohio-9052, ¶ 19. Here, the basis for Easterling's rejection of the State's plea is not part of the record. The record also does not detail the advice that Easterling received from his attorney regarding the plea. Accordingly, Easterling's ineffective assistance claim is not properly raised in this appeal.

{¶ 28} In addition, we find no indication in the record that the trial court precluded Easterling from stating, on the record, his reasons for turning down the proposed plea. Easterling states that the trial court was "rude," did not provide him an opportunity to explain, and did not inquire of defense counsel the status of plea negotiations. However, the court provided defense counsel an opportunity to raise any additional matters during the *Lafler* hearing, and defense counsel did not request an opportunity to place on the record Easterling's reasons for rejecting the plea.

{¶ 29} Easterling's first and second assignments of error are overruled.

### III. Sufficiency of the Evidence

{¶ 30} In his fourth and fifth assignments of error, Easterling claims that his convictions for obstructing official business and domestic violence were based on insufficient evidence.

**{¶ 31}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

**{¶ 32}** In reviewing challenges based on the sufficiency of the evidence, we are required to consider all of the evidence admitted at trial, regardless of whether it was admitted erroneously. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284; *State v. Rosales*, 2d Dist. Montgomery No. 27117, 2018-Ohio-197, ¶ 16, citing *State v. Johnson*, 2015-Ohio-5491, 55 N.E.3d 648, ¶ 95 (2d Dist.).

**A. Obstructing Official Business**

**{¶ 33}** Easterling was convicted of obstructing official business, in violation of R.C. 2921.31(A). That statute reads: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

**{¶ 34}** Easterling claims that his conviction for obstructing official business must be reversed for several reasons. First, he asserts that he did not engage in any

affirmative act or undertaking that hampered or obstructed the Xenia police officers in their investigation of domestic violence. He argues that he merely refused to cooperate. Second, Easterling argues that he did not make any false or incorrect statements to the officers. Third, citing *State v. Grice*, 190 Ohio App.3d 700, 2009-Ohio-372, 906 N.E.2d 1203 (1st Dist.), he argues that his conduct did not create a "substantial stoppage of the officer's progress," because he was quickly apprehended. *Id.* at ¶ 12.

{¶ 35} To be guilty of the offense of obstructing official business, an individual must commit an overt act done with an intent to obstruct a public official, such as a police officer, and the act must succeed in actually hampering or impeding that officer. *State v. Davis*, 2017-Ohio-5613, 94 N.E.3d 194, ¶ 37 (2d Dist.). "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Henry*, 2018-Ohio-1128, 110 N.E.3d 103, ¶ 55 (10th Dist.), quoting *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 12 (1st Dist.); *State v. Gibson*, 2019-Ohio-1022, __ N.E.3d. __, ¶ 18 (2d Dist.). The totality of the defendant's conduct should be considered, as opposed to viewing each act in isolation. *State v. Body*, 2018-Ohio-3395, 117 N.E.3d 1024, ¶ 22 (2d Dist.).

{¶ 36} We have consistently held that, to violate the obstructing official business statute, the defendant must engage in an affirmative act(s) that hampers or impedes a public official in the performance of the official's duties. *E.g., State v. Gillam*, 2d Dist. Montgomery No. 27998, 2019-Ohio-808, ¶ 15; *State v. Fader*, 2d Dist. Montgomery No. 27828, 2018-Ohio-4139, ¶ 12; *State v. Prestel*, 2d Dist. Montgomery No. 20922, 2005-Ohio-5236. "A mere failure or refusal to respond to an officer's request does not

constitute obstructing official business." (Citations omitted.) *State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398, ¶ 17; *see also Body* at ¶ 21. "For example, refusing to answer the door when police knock and identify themselves and refusing to obey an officer's request for information [do] not constitute obstructing official business." *Prestel* at ¶ 16.

{¶ 37} "Generally, an individual can be found guilty of obstructing official business when he [or she] persists in performing a specific act [after] a police officer has told him [or her] to stop." *Girard v. Oakman*, 2018-Ohio-1212, 110 N.E.3d 530, ¶ 52 (11th Dist.); *see Gibson* at ¶ 19. "[I]f an officer has the right to detain an individual, the individual cannot continue walking away from the officer once he [or she] is aware that the officer is trying to detain him [or her]." *State v. Harris*, 2015-Ohio-5378, 56 N.E.3d 286, ¶ 7 (9th Dist.), citing *State v. Davis*, 140 Ohio App.3d 751, 753, 749 N.E.2d 322 (1st Dist.2000); *see State v. Holloway*, 2d Dist. Clark No. 2017-CA-91, 2018-Ohio-4636, ¶ 37. Fleeing from a lawful *Terry* stop is an affirmative act that constitutes obstructing official business. *Holloway* at ¶ 37.

{¶ 38} For example, in *State v. McLaughlin*, 2015-Ohio-4611, 48 N.E.3d 987 (2d Dist.), a police officer was investigating a report of a stolen vehicle when he observed a prior occupant of the vehicle (the defendant) walking toward the vehicle. Upon seeing the officer by the vehicle, the defendant turned and began to walk away. The officer immediately ordered the defendant to stop. The defendant turned and looked at the officer, but continued to walk away. We concluded that "walking away despite being ordered repeatedly to stop in the course of [the officer's] investigation of the stolen vehicle constitutes an affirmative act or undertaking that impeded [the officer's] ability to perform

his duty." *Id.* at ¶ 17.

**{¶ 39}** Other appellate districts have concluded that a defendant's act of retreating into his or her home, contrary to an officer's instructions, can constitute obstructing official business. For example, the Ninth District Court of Appeals affirmed a conviction for obstructing official business when the defendant retreated into his house after being ordered to place his hands on his head. *Harris* at ¶ 8. Similarly, the Third District concluded that a defendant's acts of twice withdrawing into his home, failing to provide identification, and using belligerent and profane language constituted obstructing official business. *State v. Shoe*, 3d Dist. Shelby No. 17-17-22, 2018-Ohio-3006.

**{¶ 40}** In this case, Easterling came onto the porch of his home while two police officers were talking to his father, brother, and another individual regarding a complaint of domestic violence. Officer Atkins approached Easterling, told Easterling that he (Atkins) needed to talk with Easterling, and instructed Easterling not to go back into the house. Easterling ignored Officer Atkins's instructions and started back toward the front door, despite Officer Atkins's continued commands that Easterling stop and not go back into the house. When Officer Atkins reached the front door, Easterling slammed the door in his face and pushed on the door to prevent the officer's entry. Officer Roelker, who had been speaking with Shane and another individual, came and assisted Officer Atkins's efforts to enter the home and arrest Easterling. Easterling did not merely refuse to cooperate; he engaged in the affirmative conduct of disobeying the officer's order to stop and not return to the house, entering his home, and pushing against the door to prevent the officers from apprehending him.

**{¶ 41}** Easterling asserts that he did not obstruct official business, because he did

not provide incorrect or false statements. We have stated that verbal acts alone, including the provision of false identification or statements, can constitute obstructing official business. *See, e.g., Gibson,* 2019-Ohio-1022, __ N.E.3d __, at ¶ 18; *Fader*, 2d Dist. Montgomery No. 27828, 2018-Ohio-4139, ¶ 18 (State presented sufficient evidence of obstructing official business based on defendant's provision of false identity). However, obstructing official business is not limited to situations where false or incorrect statements are made.

{¶ 42} Finally, the fact that the delay occasioned by Easterling's conduct was approximately 90 seconds does not require the reversal of his conviction. As stated by the First District, " '[w]e do not hold that any finite period of time constitutes a "substantial stoppage," be the delay occasioned by the interference thirty seconds or two minutes.' If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction." *Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 18, quoting *State v. Dunn*, 1st Dist. Hamilton No. C-790319, 1980 WL 352885, * 2 (Mar. 26, 1980); *see, e.g., Fader* at ¶ 18 (quoting *Wellman*). While the delay occasioned by Easterling's conduct was not long, the State's evidence established that Easterling's conduct impeded and delayed the officers' investigation of the domestic violence complaint and Easterling's arrest.

{¶ 43} Easterling's fourth assignment of error is overruled.

**B. Domestic Violence**

{¶ 44} Easterling was also convicted of domestic violence, in violation of R.C. 2919.25(A). R.C. 2919.25(A) provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The phrase "family or household

member" includes a parent of the offender who is residing with the offender. R.C. 2919.25(1)(a)(ii).

{¶ 45} Easterling's argument that the State's evidence was insufficient is based on a contention that his father's statements to his brother should have been excluded. Easterling asserts that, if his father's statements to his brother were excluded, the remaining evidence would be insufficient to convict him of domestic violence.

{¶ 46} As stated above, in reviewing the sufficiency of the evidence, we consider the evidence that was admitted at trial, regardless of whether it was improperly admitted. As the Ohio Supreme Court stated in *Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284:

By permitting a reviewing court to consider all the evidence presented at trial, *Lockhart*'s [*Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)] holding recognizes that the state may rely upon the trial court's evidentiary rulings in deciding how to present its case. "If the evidence offered by the State is received after challenge and is legally sufficient to establish the guilt of the accused, the State is not obligated to go further and adduce additional evidence that would be, for example, cumulative. Were it otherwise, the State, to be secure, would have to assume every ruling by the trial court on the evidence to be erroneous and marshall [sic] and offer every bit of relevant and competent evidence. The practical consequences of this would adversely affect the administration of justice, if for no other reason, by the time which would be required for preparation and trial of every case." *State v. Wood* (Mo. 1980), 596

S.W.2d 394, 398-399; *State v. Gray* (1986), 200 Conn. 523, 538, 512 A.2d 217.

*Brewer* at ¶ 19. Easterling does not argue that the State's evidence as a whole was insufficient to support his conviction for domestic violence.

**{¶ 47}** Construing the evidence in the light most favorable to the State, we conclude that the State's evidence was sufficient to support Easterling's conviction for domestic violence. The State's evidence at trial, if believed, established that Easterling assaulted Ernest, his father, at their home and that Ernest drove to Shane's residence to seek help to remove Easterling from the residence. Shane and Officer Vitale observed a lump on Ernest's head; that injury was not present when Shane saw Ernest earlier in the day. Accordingly, the State's evidence was sufficient to show that Easterling knowingly caused physical harm to a family member, in violation of R.C. 2919.25(A).

**{¶ 48}** The fifth assignment of error is overruled.

### IV. Admissibility of the Father's Statements to Brother

**{¶ 49}** In his third assignment of error, Easterling claims that the trial court erred in admitting into evidence a statement made by Ernest to Shane, Easterling's brother. Easterling argues that the statement was inadmissible hearsay and its admission violated the Confrontation Clause of the Sixth Amendment to the United States Constitution.

**{¶ 50}** "[T]he [United States] Supreme Court has recognized that a defendant's Sixth Amendment right to confront witnesses against him is violated when an out-of-court statement that is testimonial in nature is admitted into evidence without the defendant having had the opportunity to cross-examine the declarant." *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 26, citing *Crawford v. Washington*, 541 U.S. 36,

68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

> Testimonial statements include statements " 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *State v. Kelley*, 2d Dist. Clark No. 2011 CA 37, 2012-Ohio-1095, ¶ 58, quoting *Crawford* at 52. " '[S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' " *Eicholtz* at ¶ 26, quoting *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), paragraph one of the syllabus.

*State v. Kerr*, 2d Dist. Montgomery No. 26686, 2016-Ohio-965, ¶ 22.

**{¶ 51}** The Sixth Amendment right to confrontation of witnesses does not extend to nontestimonial hearsay. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 13, citing *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 21. Evid.R. 803(1) permits the admission of a "present sense impression," which is defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Similarly, Evid.R. 803(2) excludes an excited utterance from the hearsay rule. An excited utterance is "[a] statement relating

to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

{¶ 52} The excited utterance and present sense impression exceptions to the definition of hearsay reflect "an assumption that statements or perceptions that describe events uttered during or within a short time from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event. Moreover, 'the key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived — a fact which obviously detracts from the statement's trustworthiness.' " *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, 847 N.E.2d 1237, ¶ 35 (2d Dist.), quoting *State v. Ellington*, 8th Dist. Cuyahoga No. 84014, 2004-Ohio-5036, ¶ 10.

{¶ 53} Finally, relevant evidence is generally admissible whereas irrelevant evidence is not. Evid.R. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 402; Evid.R. 403(A).

{¶ 54} A trial court has broad discretion to admit or exclude evidence, and its exercise of that discretion will not be disturbed on appeal absent an abuse of discretion. *Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, at ¶ 14. "A trial court abuses

its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

**{¶ 55}** We find no abuse of discretion in the trial court's determination that Ernest's statements to Shane were admissible under the excited utterance exception to the hearsay rule. Shane testified that he lived one and a half blocks from Ernest's home, and that it would take a minute to 90 seconds to get from one residence to the other. Shane stated that Ernest came to his (Shane's) home late at night, looking "very stressed out," "very anxious," and "very agitated." Shane indicated that Ernest had a "dazed look in his eyes" and a lump on his head, which had not been there earlier in the day. Based on the testimony, the trial court reasonably concluded that Ernest was "under the stress of excitement caused by the event or condition" when he came to Shane's home and spoke to Shane.

**{¶ 56}** In addition, although Easterling did not expressly raise the Confrontation Clause as part of his objection during Shane's testimony, we conclude that Ernest's statements were not testimonial. In determining whether a statement is testimonial for Confrontation Clause purposes, we focus on the expectation of the declarant at the time of making the statement. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 182; *Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at ¶ 36. As noted in *Beasley*, "[a] truly excited utterance is unlikely ever to meet this standard; certainly an objective observer would not believe that when Davis [a shooting victim], scared, bleeding, and in shock, sought help from strangers, he expected his statements to be available for use at trial." *Id.* at ¶ 182.

**{¶ 57}** In this case, Ernest went to the nearby home of his son, Shane, to seek

assistance; he had recently been assaulted and wanted help removing Easterling from his home. An objective person would not reasonably believe that the primary purpose of Ernest's statements to Shane was to establish or prove past events potentially relevant to later criminal prosecution. Rather, viewed objectively, Ernest's statements were made under the stress of the recent abuse with the purpose to seek help. Accordingly, Ernest's statements were nontestimonial, and the Confrontation Clause did not preclude the admission of his statements to Shane at trial.

{¶ 58} Easterling's third assignment of error is overruled.

### V. Degree of the Domestic Violence Offense / Verdict Form

{¶ 59} In his seventh assignment of error, Easterling claims that the trial court erred in sentencing him for domestic violence as a felony of the third degree when the verdict form did not include the degree of the offense or a jury finding regarding an aggravating element (two or more prior convictions).

{¶ 60} Easterling was indicted for domestic violence, in violation of R.C. 2919.25(A). In general, a violation of R.C. 2919.25(A) is a misdemeanor of the first degree. R.C. 2919.25(D)(2). When an offender has previously pleaded guilty to or been convicted of one domestic violence offense, the domestic violence charge is a felony of the fourth degree. R.C. 2919.25(D)(3). The existence of two or more prior guilty pleas or convictions elevates the domestic violence charge to a felony of the third degree. R.C. 2919.25(D)(4). Easterling's indictment alleged that he had previously been convicted of domestic violence three times – twice in Xenia Municipal Court (Case Nos. 05 CRB 1759 and 12 CRB 1150) and once in the Greene County Court of Common Pleas (Case No. 02 CR 862).

{¶ 61} R.C. 2945.75(A)(2) provides: "When the presence of one or more additional elements makes an offense one of more serious degree: * * * A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

{¶ 62} The Ohio Supreme Court has held that, "pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, ¶ 14. "*Pelfrey* makes clear that in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, the verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, ¶ 17.

{¶ 63} The Supreme Court commented that R.C. 2945.75 is "a clear and complete statute" that "certainly imposes no unreasonable burden on lawyers or trial judges." *McDonald* at ¶ 14, citing *Pelfrey* at ¶ 12. The Court continued: "Its dictates are simple, and the resolution of cases that do not meet its requirements is also straightforward: 'The statute provides explicitly what must be done by the courts [when R.C. 2945.75(A)(1) is not followed]: the "guilty verdict constitutes a finding of guilty of the least degree of the offense charged." R.C. 2945.75(A)(2).' " *Id.*, citing *Pelfrey* at ¶ 13.

{¶ 64} In this case, the verdict form for the charge of domestic violence was titled "Verdict Form on Indictment For: Count 1 – Domestic Violence, O.R.C. 2919.25(A)." The

form read: "We, the Jury, being duly impaneled and sworn, find the Defendant, Brian K. Easterling, _____* of DOMESTIC VIOLENCE." The jury was instructed to insert "not guilty" or "guilty beyond a reasonable doubt" on the blank line; the jury wrote "guilty beyond a reasonable doubt." The record reflects, and the State agrees, that the verdict form did not contain the degree of the domestic violence offense or the aggravating circumstance. The jury was not asked to separately determine whether Easterling had previously pled guilty or been convicted of two or more counts of domestic violence.

**{¶ 65}** The State asserts that the omission of the degree of the offense or the aggravating circumstance in the verdict form should be deemed harmless error, because the parties stipulated at trial that Easterling had two or more prior convictions for domestic violence. We disagree.

**{¶ 66}** "A stipulation is a voluntary agreement between opposing counsel concerning disposition of some relevant point so as to obviate the need for proof or to narrow the range of litigable issues." 89 Ohio Jurisprudence 3d, Trial § 60; *State v. Carr*, 2d Dist. Montgomery No. 23826, 2010-Ohio-6470, ¶ 12. "[A] stipulation, which is agreed to by both parties, is evidence. * * * 'It is, in truth, *a substitute for evidence*, in that it does away with the need for evidence.' " (Emphasis added.) *State v. Turner*, 105 Ohio St.3d 331, 2005-Ohio-1938, 826 N.E.2d 266, ¶ 40, quoting 9 Wigmore, Evidence (Chadbourn Rev.1981) 821, Section 2588.

**{¶ 67}** Of relevance here, when a prior conviction elevates the level of an offense, " 'the prior conviction is an essential element of the crime, and [it] must be proved by the state.' " *State v. Tate*, 138 Ohio St.3d 139, 2014-Ohio-44, 4 N.E.3d 1016, ¶ 17, quoting *State v. Allen*, 29 Ohio St.3d 53, 54, 506 N.E.2d 199 (1987). "An offender's stipulation

that he has the prior conviction satisfies the state's obligation of proof." *State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 35 (1st Dist.). As stated by the Ohio Supreme Court, "R.C. 2945.75(B)(1) sets forth one way to provide 'sufficient' proof of a prior conviction, but does not provide the *only* method to prove it. For example, an offender may, and often does, stipulate to a prior conviction to avoid the evidence being presented before a jury." (Emphasis sic.) *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, ¶ 14; *see also, e.g., State v. Phillips*, 4th Dist. Scioto No. 18CA3832, 2018-Ohio-5432, ¶ 56 (without stipulations regarding defendant's prior convictions, the state was required to provide evidence of prior convictions to establish the felony domestic violence charge); *State v. Stover*, 8th Dist. Cuyahoga No. 104388, 2017-Ohio-291, ¶ 21.

{¶ 68} In this case, the parties' stipulation read: "1. The Defendant, Brian K. Easterling, has previously been convicted, either after a plea of guilty, or after a jury returned a verdict finding him guilty, of two or more offenses of domestic violence." (Tr. at 69; Doc. #39.) When the stipulation was read to the jury, the court instructed the jury that "a stipulation is an agreement by both parties that certain facts are true."

{¶ 69} During jury instructions, the trial court provided additional instructions regarding the stipulation. Before addressing the elements of the two offenses, the trial court repeated the definition of a stipulation and indicated that the following evidentiary stipulation was made:

> The Defendant, Brian Easterling, has previously been convicted, either after a plea of guilty or after a jury returned a verdict finding him guilty, of two or more offenses of Domestic Violence: specifically, Xenia Municipal Court case number 12CRB01150; Xenia Municipal Court case number

05CRB01759; and Greene County Common Pleas Court case number 02CR00862.

The trial court then addressed the elements of domestic violence, during which it provided the following additional instructions regarding the stipulation:

**Prior Conviction**

The parties agree and stipulate the Defendant, Brian K. Easterling, has been previously convicted of two or more offenses of Domestic Violence. *No other evidence needs to be submitted to make this determination.*

**Use of Prior Conviction: Enhancing the Degree of Offense**

Evidence was received that the Defendant was previously convicted of Domestic Violence. The offense of Domestic Violence is an offense of violence against a family or household member. That evidence was received because a prior conviction of Domestic Violence is an element of the offense of Felony Domestic Violence. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity with that character.

(Emphasis added.)

**{¶ 70}** The presence of the parties' stipulation did not obviate the requirement that the verdict form include the degree of the offense or the aggravating circumstance. By entering into the stipulation, the parties eliminated the requirement that the State *present evidence* (outside of the stipulation) of Easterling's prior convictions. The stipulation did not eliminate the need for the jury, as the finder of fact, to make a factual finding regarding the prior convictions or the degree of the domestic violence offense. *See Carr*, 2d Dist.

Montgomery No. 23826, 2010-Ohio-6470 (stipulation regarding defendant's prior drug convictions was sufficient evidence of the prior convictions for the court to find the defendant guilty of having weapons while under disability).

{¶ 71} The Third District held similarly in *State v. Gregory*, 3d Dist. Hardin No. 6-12-02, 2013-Ohio-853. Gregory was indicted on a single count of domestic violence, a felony of the third degree. At trial, Gregory stipulated that he had two prior convictions of domestic violence, and copies of those convictions were admitted into evidence. The trial court's jury instruction included a statement that, before it could find Gregory guilty, it "must find Defendant has pleaded guilty to or has been convicted of two or more offenses of domestic violence involving a person who was a family or household member at the time of the violations or offenses." The verdict form, however, simply stated, "We, the Jury in this case find the Defendant, Trace Elliot Gregory, guilty of the offense of Domestic Violence."

{¶ 72} On appeal, Gregory asserted that he could not be convicted of domestic violence as a felony, pursuant to R.C. 2945.75(A)(2) and *Pelfrey*. Reviewing under a plain error analysis, the Third District agreed. The appellate court stated: "Although Gregory stipulated that he had two prior convictions for domestic violence and the jury instructions specified the correct offense and degree, these facts, under *Pelfrey*, do not excuse the failure to comply with R.C. 2945.75(A)(2)." *Gregory* at ¶ 21. The Third District reversed Gregory's conviction as a third-degree felony and remanded to the trial court for the entry of a judgment convicting Gregory of domestic violence as a first-degree misdemeanor.

{¶ 73} As stated above, the verdict form "is the only relevant thing to consider in

determining whether the dictates of R.C. 2945.75 have been followed." *McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, at ¶ 17. The jury's verdict that Easterling was guilty of domestic violence, in violation of R.C. 2919.25(A), without more, was inadequate to convict Easterling of domestic violence as a felony. Easterling's conviction for domestic violence must be modified to reflect the lesser degree on which conviction was appropriate, i.e., a misdemeanor of the first degree.

{¶ 74} Easterling began serving his prison sentence on July 26, 2018. In addition, the trial court awarded him 141 days of jail time credit, plus credit for additional days while awaiting transportation to the state institution. Consequently, Easterling has already served his sentence for obstructing official business (60 days) and the maximum possible sentence (180 days) for domestic violence as a first-degree misdemeanor. Accordingly, rather than remand for resentencing, we elect to modify Easterling's domestic violence sentence to the maximum 180 days in jail, and he will be ordered released from custody as to this matter.

{¶ 75} Easterling's seventh assignment of error is sustained.

## VI. Maximum Sentence

{¶ 76} In his sixth assignment of error, Easterling claims that the trial court erred in imposing a maximum sentence of 36 months in prison. In light of our disposition of Easterling's seventh assignment of error, the sixth assignment of error is overruled as moot.

## VII. Conclusion

{¶ 77} The trial court's judgment as to Easterling's conviction for obstructing official business will be affirmed. Easterling's conviction for domestic violence will be modified

to a first-degree misdemeanor, Easterling's sentence for domestic violence will be modified to the maximum 180 days in jail, and the judgment as to the domestic violence charge will be affirmed as modified.

**{¶ 78}** The matter is remanded to the trial court with instructions to immediately take the appropriate steps to advise the Ohio Department of Rehabilitation and Correction of the modified domestic violence conviction and to cause Easterling's immediate release from prison, assuming that he is not subject to any detainers, hold orders, or other orders that would require his continued imprisonment or detainment. The trial court is further instructed to file a copy of this Opinion and Final Judgment Entry as part of the trial court record in this case. Counsel for the parties to this appeal shall advise this Court, in writing, within ten days of the date of this Court's Final Judgment Entry as to the status of this matter, including whether Easterling has, if appropriate, been released from prison.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

David M. Morrison
David R. Miles
Hon. Michael A. Buckwalter
Ohio Department of Rehabilitation and Correction, regarding Brian K. Eastering (as spelled on the ODRC website), #A746167